UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

HERBERT COFER,

        Plaintiff,

   v.

PARKER-HANNIFIN CORPORATION; DAVID CONLON, an individual; KIM MELTON, an individual; FRANK DUBEY, an individual; and DOES 1 through 50, inclusive,

        Defendants.

Case No.: SACV 16-00596-CJC(AFMx)

**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO REMAND**

## I. INTRODUCTION

Plaintiff Herbert Cofer brought this action against his former employer, Parker-Hannifin Corporation (Parker), and Parker employees David Conlon, Kim Melton, and

Frank Dubey.  Mr. Cofer filed his complaint in Orange County Superior Court in February 2016 and Parker removed the action to federal court based on diversity jurisdiction.  (Dkt. 1.)  Mr. Cofer is asserting a harassment claim against all defendants, as well as claims for race discrimination, age discrimination, failure to take reasonable steps to prevent discrimination and harassment, retaliation, and wrongful discharge against Parker only.  All claims have been brought under California state law.  Defendants filed a motion to dismiss all claims in the Complaint, (Dkt. 11), and the Court granted it in part.  Mr. Cofer has now filed his First Amended Complaint (FAC), (Dkt. 23), and Defendants have filed a motion to dismiss only his claims for harassment and failure to prevent harassment, as well as his pleadings seeking punitive damages.  (Dkt. 24.)

As explained below, though Mr. Cofer has alleged facts that state a plausible case of workplace discrimination, he has not stated viable claims for harassment or failure to prevent harassment.  The Court therefore DISMISSES the claims for harassment and failure to prevent harassment.  The Court DENIES Defendants' motion to dismiss the portions of Mr. Cofer's complaint pertaining to punitive damages.

Mr. Cofer has filed a motion to remand this case to state court on the basis that there is not complete diversity between himself and Defendants.  (Dkt. 25.)  Though Parker is not a citizen of California, Mr. Cofer and the individual defendants are. Nonetheless, the only claims against the individual defendants are the harassment claim and the failure to prevent harassment claim.  Both of those claims were dismissed in the first motion to dismiss and Mr. Cofer was given leave to amend his complaint.  Mr. Cofer's FAC has again failed to state a valid claim for harassment or failure to prevent harassment.  California law on the issue is sufficiently settled for this Court to conclude that the joinder of the individual Defendants is fraudulent.  The only defendant left in the

case after dismissal, Parker, is not a California citizen and therefore does not defeat diversity. Accordingly, Mr. Cofer's motion to remand is DENIED.

Because Mr. Cofer has already been given leave to amend his complaint once and has shown no sign that he is able to add sufficient facts to state a plausible claim for harassment, his harassment-related claims are DISMISSED WITH PREJUDICE.[1]

## II. BACKGROUND

In 1990, Parker hired Mr. Cofer, a black man, as a Senior Contract Administrator, and Mr. Cofer was promoted many times until he eventually became Staff Program Administrative Manager in 2010. (FAC. ¶¶ 10, 14.) In March or April of 2012, Mr. Cofer applied for the position of Director of Program Management. (FAC. ¶ 18.) Though Mr. Cofer had over 32 years' experience in the aerospace industry and had worked at Parker for over 20 years, he was not "given a serious interview" for the position. (*Id.*) In October 2012, defendant Conlon, a white man, was hired for the Director of Program Management position and became Mr. Cofer's supervisor. (FAC ¶ 19.) Another Parker employee, defendant Melton, did not interview Mr. Cofer for the positions to which he applied, and refused to evaluate his qualifications for promotions. (FAC ¶¶ 19.)

Mr. Cofer filed an EEOC charge against Parker, alleging race discrimination, in November 2012. (FAC ¶ 22.) He asserts that he applied for advancement within the company and was falsely told that he was not qualified, and that the people who were ultimately hired to the positions he sought were white. (*Id.*)

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for July 11, 2016 at 1:30 p.m. is hereby vacated and off calendar.

In November 2013, Mr. Cofer was denied training on a new software tool and was not allowed to attend various program reviews, program meetings, and meetings with upper management, even though one of his direct subordinates was included in the meetings.  (FAC ¶ 26.)  From 2012 through 2014, Mr. Cofer applied for several other positions at Parker, but was never hired, and was also passed over for several internal transfers.  (FAC ¶¶ 21, 23, 25, 28, 29.)  He remained employed, but was not given a performance review he was due on July 21, 2015.  (FAC ¶ 35.)

Mr. Cofer's complaint alleges that in addition to being passed up for promotions and denied the opportunity to interview, defendants Conlon, Melton, and Dubey denied him training and planned to terminate him without ever initiating an investigation into his claims.  (FAC ¶ 36.)  Parker terminated Mr. Cofer and three other employees age 55 and over in August 2015.  (FAC ¶ 37.)

**III.  ANALYSIS**

    **A.  The Motion to Dismiss**

        **1.  Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and

construe them in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citations and quotes omitted)). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

### 2. The Harassment Claim and Failure to Prevent Harassment Claim

Under California's Fair Employment and Housing Act (FEHA), harassment in the workplace consists of "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Kelly-Zurian v. Wohl Shoe Co.*, 22 Cal. App. 4th 397, 409 (1994) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). Harassing conduct takes place "outside the scope of necessary job performance," and is "presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." *Reno v. Baird*, 18 Cal. 4th 640, 646 (1998). "[H]arassment focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 707 (2009). Personnel-related decisions involving discipline, performance evaluations,

compensation, or job assignments do not inherently constitute unlawful harassment. *Reno*, 18 Cal. 4th at 646-47. This is because personnel-related decisions are a normal part of an employment relationship that cannot be avoided. *Id.* In contrast, conduct that constitutes harassment is avoidable because it is not a necessary part of the employment relationship. *Id*.

As the California Supreme Court explained:

> Making a personnel decision is conduct of a type fundamentally different from the type of conduct that constitutes harassment. Harassment claims are based on a type of conduct that is avoidable and unnecessary to job performance. No supervisory employee needs to use slurs or derogatory drawings, to physically interfere with freedom of movement, to engage in unwanted sexual advances, etc., in order to carry out legitimate objectives of personnel management . . . We conclude, therefore, that the Legislature intended that commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning or harassment. These actions are of a type necessary to carry out the duties of business and personnel management.

*Id*. at 646-47.

An employee may pursue a claim for discrimination against his employer solely based on such personnel-management-related conduct, but cannot pursue a claim for harassment:

> These actions [including project assignments, promotion or demotion, performance evaluations, or compensation decisions] may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment. Harassment, by contrast, consists of actions outside the scope

of job duties which are not of a type necessary to business and personnel management.

*Id.* at 647 (quoting *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 63-65 (1996)).

Mr. Cofer alleges that he was harassed on account of his age, race, color, ancestry, and national origin. To support his claim, Mr. Cofer asserts that Defendants Conlon, Melton, and Dubey were all involved in the following decisions: "1) refusing to interview Cofer for promotions for which he applied; 2) precluding him from taking further training; 3) refusing to evaluate his qualifications for promotions; 4) excluding him from program meetings and meeting with upper management; and 5) terminating him thereby ending his 25-year career along with terminating older employees." (Dkt. 27 Pl.'s Opp'n Br. at 9.) As this Court indicated in its prior order dismissing Mr. Cofer's Complaint, the California Supreme Court in *Reno* held that these types of allegations did not amount to actionable harassment because the *Reno* plaintiff had simply alleged routine personnel-related conduct. *Reno*, 18 Cal. 4th at 646-47.

Both Mr. Cofer's opposition to the initial motion to dismiss and his opposition to the motion to dismiss his FAC focus on the California Supreme Court's later holding in *Roby v. McKesson*, 47 Cal. 4th 686, 707-08 (2009), that personnel management decisions can provide evidence of harassment in addition to discrimination. This Court discussed *Roby*'s application to the facts of this case in its prior order and found that it was distinguishable in significant respects. Having fully reviewed Mr. Cofer's FAC and updated briefing, the Court reaches the same conclusion once again.

In *Roby*, the California Supreme Court acknowledged that "discrimination refers to bias in the exercise of official actions on behalf of the employer, and harassment refers to bias that is expressed or communicated through interpersonal relations in the workplace." *Roby,* 47 Cal. 4th at 706-07. The Supreme Court ultimately held, though, that the Court

of Appeal had erred by determining that evidence concerning personnel-related decisions made with respect to the plaintiff provided evidence only of the discrimination claim and not the harassment claim. *Id.* at 709-10. The Court noted that "harassment is generally concerned with the *message* conveyed to an employee, and therefore with the social environment of the workplace," but that in some cases "official employment actions done in furtherance of a supervisor's managerial role can also have a secondary effect of communicating a hostile message." *Id.* at 709 (citing *Miller v. Dept. of Corrections*, 36 Cal. 4th 446, 460-66 (2005)).

*Roby* discusses *Miller v. Dept. of Corrections*, 36 Cal. 4th 446 (2005), a case in which the California Supreme Court found that the plaintiffs had stated a prima facie case of harassment by alleging that promotions and favorable job assignments were given to female employees involved in sexual relationships with a particular male supervisor. *Roby*, 47 Cal. 4th at 708. Though the *Miller* plaintiffs were not themselves subject to any demands for sexual favors, they had stated a harassment claim because "widespread sexual favoritism could convey a 'demeaning message . . . to female employees that they are viewed by management as "sexual playthings" or that the way required for women to get ahead in the workplace is to engage in sexual conduct with their supervisors or the management.'" *Id.* (quoting *Miller*, 36 Cal. 4th at 451).

In *Roby* itself, the Court concluded that some actions that the supervisor took with respect to the plaintiff were "best characterized as official employment actions rather than hostile social interactions at the workplace" but that they may have contributed to the hostile message the supervisor was expressing to the employee "in other, more explicit ways." *Id.* at 709. These "other, more explicit ways" in *Roby* included negative comments about the plaintiff's body odor, calling the plaintiff "disgusting" based on sores on her arms related to her disability, openly ostracizing the plaintiff in the office, making facial expressions of disapproval when the plaintiff took rest breaks necessitated

by her disability, and other similar acts. *Id*. at 711. The *Roby* Court concluded that "acts of discrimination can provide evidentiary support for a harassment claim by establishing discriminatory animus on the part of the manager responsible for the discrimination, thereby permitting the inference that rude comments or behavior by that same manager was similarly motivated by discriminatory animus." *Id*. Unlike the situation in *Roby*, the allegations here consist *only* of official employment actions—there were no allegations at all concerning rude comments or anything else aside from official employment actions. Mr. Cofer's briefing does not address the fact that in addition to adverse employment decisions, *Roby* concerns numerous hostile comments the plaintiff's supervisor made to her that were not personnel-related.

As this Court indicated in its earlier order, Mr. Cofer has not made a showing that the personnel decisions at issue here were somehow indicative of "widespread" favoritism or other improper action that sent a demeaning message to employees as in *Miller*. Nor has Mr. Cofer shown that the personnel-related decisions at issue in this case provide support for the idea that hostile comments made directly to the plaintiff constituted actionable harassment, as in *Roby*. Mr. Cofer's FAC does not present additional facts that alter the Court's past conclusions. Unlike *Roby,* Mr. Cofer's allegations exclusively concern the plaintiff's failure to be promoted, promotion of others as opposed to him, failure to be included in meetings and trainings, and ultimate termination. These decisions are entirely personnel-related and fit neatly within the discrimination framework.

Mr. Cofer argues that his work environment became intolerable when he was left out of meetings, his discrimination claims were not investigated, he was refused interviews for promotions, younger white employees were promoted ahead of him, and he was in one instance called on the phone while on vacation and told that he did not get a promotion. (Dkt. 25, Pl.'s Br. ISO Mot. to Remand at 13.) But if these acts—absent

any additional connection to comments made to Mr. Cofer, the social environment of the workplace, or anything else at all—were sufficient to state a harassment claim, then every classic discrimination claim would be made into a harassment claim as well simply by asserting it as such.  This would dissolve the distinction between harassment and discrimination presented in the pertinent statute, discussed at length in *Reno*, and acknowledged in *Roby*.  This Court concludes once again that the straightforward adverse employment actions Mr. Cofer alleges state a claim for discrimination but that absent something more, they do not also state a claim for harassment.

### 3.  Punitive Damages

Defendants move to dismiss the portions of Mr. Cofer's claims related to punitive damages on the basis that the allegations he makes to support the award of punitive damages are conclusory.  Mr. Cofer alleges that Parker's alleged wrongful acts were done "intentionally, oppressively, with malice towards Plaintiff, or a reckless indifference to his statutorily protected rights . . . ."  (FAC ¶¶ 47, 72, 82, 91.)  He also alleges that "the outrageous conduct of managing agents and/or supervisory employees of defendant Parker-Hannifin, was done with fraud, oppression and malice . . . ."  (FAC ¶ 61.)

Parker argues that there are no specific facts alleged in the body of the FAC from which the Court could possibly infer oppressive, fraudulent, or malicious conduct committed on the part of any officer, director, or managing agent of Parker.  But though the FAC does not repeat Cofer's factual allegations in the paragraphs concerning punitive damages, it does tie those punitive damages allegations to the allegations made earlier in the complaint.  These allegations include Defendants' failing to interview Cofer for positions that he had applied for, consistently awarding of those positions to white employees, excluding Cofer from meetings, and retaliating against him in several ways when he filed his EEOC complaint.  Cofer's FAC also alleges a conscious effort on

Defendants' part to prevent him from advancing in the company due to his race and his age. These allegations, with sufficient evidentiary support, can support a charge of malice sufficient to sustain a punitive damages award. The Court will not grant Defendants' motion to dismiss the allegations related to punitive damages. Though Mr. Cofer's allegations are fairly general, the Court finds them to be sufficient. The Court will consider the evidentiary support for them at the summary judgment stage, should Parker again challenge them at that stage in the litigation.

### B. Motion to Remand

By statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A party is entitled to remove a state court action based on diversity jurisdiction where: (a) the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs; and (b) the parties are citizens of different states. 28 U.S.C. § 1332. Parker asserted that these requirements were met and removed the case to federal court. (Dkt. 1.)

Mr. Cofer is a citizen of California, Parker is a citizen of Ohio, and Conlon, Melton, and Dubey are citizens of California. Because Mr. Cofer and the individual defendants are all citizens of California, Mr. Cofer is seeking to remand this action to state court on the basis that the parties are not diverse under 28 U.S.C. § 1332.

A defendant, however, may remove a civil action that alleges claims against a non-diverse defendant to federal court when the plaintiff has no basis for suing that defendant. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). "If the plaintiff fails

to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *Id*. In such a case, the "fraudulently joined" defendant is disregarded for jurisdictional purposes. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). The term "fraudulent joinder" is a term of art and does not connote any intent to deceive on the part of plaintiffs or their counsel. *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979). The burden of proving fraudulent joinder is a heavy one. The removing party must prove that there is "no possibility that plaintiff will be able to establish a cause of action in State court against the alleged sham defendant." *Good v. Prudential Ins. Co. of America*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998).

Here, Parker has met this high burden. The Court determined that Mr. Cofer failed to state a claim against any of the individual defendants and that dismissal of the claims against those defendants is appropriate. The Court also concludes that the failure of the claims against those defendants was sufficiently clear as a matter of California law as to render the joinder of those defendants fraudulent. At least one other Court in this district has reached the same conclusion with respect to a harassment claim brought under California law and involving similar facts. *See Wexler v. Jensen Pharmaceuticals, Inc.*, CV 15-03518-AB (AJWx), 2015 WL 6159101, at *4-7 (Oct. 20, 2015). Because the harassment-related claims clearly fail and Cofer has given no indication that he has any other viable claim against the individual defendants, his motion to remand is denied.

//
//
//
//
//
//

## IV. CONCLUSION

The Court GRANTS Defendants' motion to dismiss Mr. Cofer's claims for harassment and failure to prevent harassment, DENIES Defendants' motion to dismiss the portions of Mr. Cofer's complaint pertaining to punitive damages, and DENIES Mr. Cofer's motion to remand.

DATED:     July 8, 2016

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE